# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| DAVID KING, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>LUTHERAN CHILD AND FAMILY )<br>SERVICES OF ILLINOIS, an Illinois )<br>Not-For-Profit Corporation, )<br>)<br>Defendant. ) | No. 18 C 309<br><br>Judge Rebecca R. Pallmeyer |

## MEMORANDUM OPINION AND ORDER

From July 2015 through April 2016, Plaintiff David King was employed by Defendant Lutheran Child and Family Services ("LCFS") at a residential child care facility. During a shift as an overnight child care worker, King allegedly fell asleep, and a minor under his care reported being sexually assaulted by a fellow resident during that time. Defendant terminated King on April 4, 2016. King has since contested his termination in a variety of forums. He filed discrimination charges with the EEOC and the Illinois Department of Human Rights ("IDHR"), claiming that he was discriminated against because of a disability, but neither agency found discrimination.

LCFS also reported King to the Illinois Department of Children and Family Services ("DCFS") for neglect of a minor, which resulted in King's placement on a statewide "abuse and neglect" register. King challenged his placement on the register through state administrative proceedings; he then sought review of those proceedings by filing a complaint for administrative review in the Circuit Court of the Eighteenth Judicial Circuit in DuPage County. *See King v. Illinois Department of Children and Family Services*, No. 2017 MR 339 (Ill. Cir. Ct., filed Mar. 13, 2017). While that case was pending, Plaintiff and DCFS reached a settlement agreement under which King's name was removed from the neglect register. In return, he agreed to release his claims

against DCFS and its agents for any claims "which arose or could have arisen from the facts or claims made in the Action" against DCFS. (Settlement Agreement [20], at Page ID # 173.)

At the time the parties signed the settlement agreement, Plaintiff had already filed this case against LCFS in federal court, but the settlement makes no mention of it. LCFS now moves for judgment on the pleadings [46], arguing that the King-DCFS settlement releases LCFS from King's claims. Defendant's motion is denied.

## **BACKGROUND**

In reviewing a motion for judgment on the pleadings, the court "accept[s] all well-pleaded facts as true and draw[s] reasonable inferences in the plaintiffs' favor." *Kanter v. Barr*, 919 F.3d 437, 440–41 (7th Cir. 2019) (quoting *Roberts v. City of Chicago*, 817 F.3d 561, 564 (7th Cir. 2016)).

Defendant LCFS hired Plaintiff King to work at its Lutherbrook Child and Adolescent Center ("Lutherbrook") in July 2015. (Df.'s Motion [46] ¶ 11; Pl.'s Resp. [55] Background ¶ 2.)[1] Lutherbrook "specializes in residential care and treatment for children and adolescents with severe emotional and behavioral difficulties." (Df.'s Motion [46] ¶ 17.) The parties disagree about whether King was hired as a Child Care Worker or an Overnight Child Care Worker, but by November 2015, he was in the overnight role.[2] (*Compare* Df.'s Motion [46] ¶ 11 *with* Pl.'s Resp. [55] Introduction ¶ 1, Argument ¶ 13(a).) "[A]s an Overnight Child Care Worker, King was responsible for supervising residents on his assigned unit and assuring safety and security during

---

[1] Plaintiff's response brief contains three sections—an introduction, a background section, and an argument section—each with separately enumerated paragraphs. For clarity, the court will specify to which section the cited paragraph number pertains.

[2] King claims he was transitioned into the overnight role because "LCFS' Lutherbrook made a false claim that they were being written up by DCFS for [King] not being able to produce his college degree . . . and that DCFS states they are not allowed to let anyone with a college degree work with youth during the day." (Pl.'s Resp. [55] Background ¶ 3, Argument ¶ 4.)

2

the overnight hours and morning routine." (Df.'s Motion [46] ¶ 17; see Pl.'s Resp. [55] Background ¶ 5.) Part of King's work involved supervising an area where some residents slept.

King suffered from Schizoaffective Disorder at the time he was hired, and he continued to suffer from that disorder throughout his employment at Lutherbrook. (Pl.'s Resp. [55] Introduction ¶ 4; see Second Am. Compl. [20] Statement of Facts ¶ IV.) He alleges that LCFS knew of his disorder, that his medication made it difficult for him to stay awake at times, and that he requested accommodations for his disability, but never received them.[3] (Pl.'s Resp. [55] Background ¶¶ 9, 11, Argument ¶ 2; Second Am. Compl. [20] Statement of Facts ¶¶ I, III.)

On April 4, 2016, LCFS terminated King "for sleeping during his shift and failing to complete his required rounds or monitor the facility's residents, which resulted in the alleged sexual assault of a Lutherbrook youth resident" by another youth resident. (Df.'s Motion [46] ¶ 15.) King, however, claims that he "has never been asleep at LCFS," and that during the alleged sexual assault, "he was not asleep and only drowsy because of the psych meds that he takes." (Pl.'s Resp. [55] Background ¶¶ 9, 11.) Instead, he has several theories regarding his firing. He appears to assert either that these events would not have transpired had LCFS given him appropriate accommodations for his disability, or that he was fired in an "attempt[ ] to cover up the situation because [LCFS] kn[e]w the request the Plaintiff made for accommodations . . . " had not been fulfilled.[4] (Id. at ¶ 2.)

---

[3] Liberally construing Plaintiff's pleadings, King makes two additional claims regarding LCFS' staffing policies. He claims that LCFS violated an Illinois Department of Labor law: "if you work 7 1/2 continuous hours then by the 5th hour of an employee's shift a 20 min meal period must be given." (Pl.'s Resp. [55] Introduction ¶ 4.) He claims that he was not granted this break, and that the denial of the legally-mandated break time made it difficult for him to "stay awake (not sleep) and monitor the youth in his care." (Id.) He also argues that "LCFS did not adhere to state protocols under their contract with DCFS by not properly staffing the units at Lutherbrook. Sometimes would [sic] staff one employee to watch two units by sitting in the common area between units." (Pl.'s Resp. [55] Background ¶ 7.)

[4] King has other theories regarding his firing, as well. He appears to allege that he was fired as part of a scheme by LCFS to cover up the alleged sexual assault from state

Following his termination, King filed Charges of Discrimination with the EEOC and the IDHR for discriminatory discharge in violation of 775 ILL. COMP. STAT. 5/1-101 *et seq.* and the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.* (Df.'s Motion [46] ¶ 18.) The IDHR dismissed the suit in March 2017. (*Id.* at ¶ 19.) The EEOC adopted the findings of the IDHR and issued a right-to-sue letter in October 2017. (*Id.* at ¶ 23.)

Following King's firing, LCFS reported him to DCFS for child neglect. As a result, he was listed on a statewide neglect register "for 'inadequate supervision' of a minor in his care."[5] (Df.'s Motion [46] ¶ 3 (quoting Notification of Indicated Decision in an Employment Related Report of Suspected Child Abuse and/or Neglect [20], at PageID # 114); *see* Pl.'s Resp. [55] Argument ¶ 5.) Defendants explain that King appealed his placement on the register through a state administrative process. (Df.'s Motion [46] ¶¶ 20–21.) In February 2017, the DCFS administrative hearing unit declined to expunge King's record. He then sought judicial review of that administrative decision in the Circuit Court of DuPage County. (Df.'s Motion [46] ¶¶ 21, 22.) *See generally King v. Illinois Department of Child and Family Services*, No. 2017 MR 339 (Ill. Cir. Ct., filed Mar. 13, 2017). While judicial review was pending, Plaintiff and DCFS entered into a Settlement Agreement and General Release ("Agreement"), in which King's name was removed from the state register in exchange for his release of claims against DCFS and its agents. (*See* Settlement Agreement [20], at PageID ## 172–73.) The parties signed the Agreement on April 25, 2018.

---

authorities. As the court interprets it, King's theory is that LCFS fired him instead of reporting the minor's rape allegation to DCFS or the local police. (Pl.'s Resp. [55] Background ¶¶ 8, 10, Argument ¶¶ 8–9.) King also alleges that he was fired in an attempt by LCFS to "cover their unlawful work practices," including their staffing practices and their failure to give overnight workers breaks. (Pl.'s Resp. [55] Argument ¶¶ 1, 2.)

[5] It is not clear from the pleadings when LCFS reported King.

The relevant portions of the Agreement specify that the settlement "applies to known or unknown injuries, costs, expenses and/or damages alleged to have been suffered or incurred by the Plaintiff due to the actions or inactions of the Defendant as stated in the Plaintiff's complaint filed in the Action,[6] and is intended to be a full and complete disposition of the entire claims [sic] and/or causes." (*Id.* at ¶ 2.) The Agreement also specified that Plaintiff "releases and forever discharges the Defendant, the Illinois Department of Children and Family Services and the State of Illinois, their agents, . . . and all other persons . . . from all actions, claims, demands, setoffs, suits, causes of actions, controversies, disputes, equitable relief, compensatory and punitive damages, costs and expenses which arose or could have arisen from the facts alleged or claims made in the Action." (*Id.* at ¶ 3.) The Agreement is to be governed by Illinois law. (*Id.* at ¶ 8.)

In January 2018, King filed this lawsuit against LCFS alleging violations of the ADA, 42 U.S.C. § 12101 *et seq.*, the Federal Service Labor-Management Relations Statute, 5 U.S.C. § 7101 *et seq.*, and the Occupational Safety and Health Act ("OSHA"), 29 U.S.C. § 651 *et seq.*[7] After the court denied Defendant's motion to dismiss Plaintiff's Second Amended Complaint (Minute Entry [27]), Defendant moved for judgment on the pleadings [46]. Its sole argument is that the King-DCFS Agreement releases LCFS from King's claims.[8]

---

[6] The Agreement defines the "Action" as the DuPage County Circuit Court case "*David E. King v. Illinois Department of Children and Family Services*, Number 2017-MR-339." (Settlement Agreement [20], at PageID # 172).

[7] King also alleges a "violation of correct staffing ratio by Department of Children and Family Services." (Second Am. Compl. [20] at 2.) He does not, however, name DCFS in the suit, nor does DCFS appear to have been served. That claim (Claim VI) is dismissed. The court also notes its doubt that King has any private right of action to enforce a staffing ratio.

[8] Defendant has also filed counterclaims against King, which King has not answered. (*See* Answer [45], at 16–18.) As those counterclaims are not material to the motion for judgment on the pleadings, the court will not address them here.

5

**DISCUSSION**

Rule 12(c) permits a party to move for judgment on the pleadings "[a]fter the pleadings are closed—but early enough not to delay trial." FED. R. CIV. P. 12(c). "[T]he pleadings include the complaint, the answer, and any written instruments attached as exhibits." *N. Indiana Gun & Outdoor Shows, Inc. v. City of S. Bend*, 163 F.3d 449, 452 (7th Cir. 1998) (citing FED. R. CIV. P. 10(c)).[9] The court will grant a Rule 12(c) motion only "if it appears beyond doubt that the plaintiff cannot prove any facts that would support his claim for relief." *Buchanan-Moore v. County of Milwaukee*, 570 F.3d 824, 827 (7th Cir. 2009) (quoting *N. Indiana Gun*, 163 F.3d at 452).

A motion for judgment on the pleadings is the appropriate mechanism for enforcing a plaintiff's waiver of his right to make a claim. *United States v. Rogers Cartage Co.*, 794 F.3d 854, 860 (7th Cir. 2015) (citing *Yassan v. J.P. Morgan Chase & Co.*, 708 F.3d 963, 975 (7th Cir. 2013)). The "court's job in construing a negotiated release under Illinois law is to determine what the parties intended." *Engineered Abrasives, Inc. v. Am. Mach. Prod. & Serv., Inc.*, 882 F.3d 650, 653 (7th Cir. 2018) (citations omitted). "Courts look to the language of the settlement agreement to determine the parties' intent unless the agreement is ambiguous." *Engineered Abrasives*, 882 F.3d at 653.

The language of the Settlement Agreement here is unambiguous, and the parties' intent is clear: to bar King from bringing any new legal actions against DCFS or its agents for claims that "arose or could have arisen from the facts alleged or claims made in the Action," where the Action is defined as the DuPage County Circuit Court case "*David E. King v. Illinois Department*

---

[9] The court may refer directly to the text of the Settlement Agreement in deciding the motion for judgment on the pleadings. The agreement is attached to the Second Amended Complaint, and Defendant LCFS repeatedly quotes the language in its motion for judgment on the pleadings. *See Yassan v. J.P. Morgan Chase & Co.*, 708 F.3d 963, 975 (7th Cir. 2013) (finding that the district court's examination of the text of a release agreement was proper, "because [Defendant] attached a copy of the release to its motion to dismiss, and because [Plaintiff's] complaint repeatedly referenced the release").

*of Children and Family Services*, Number 2017-MR-339." (Settlement Agreement [20] ¶ 3; *id.* at PageID # 172). Thus, the operative question is "whether King's current lawsuit arose or could have arisen from the facts alleged or claims made in the [DuPage County] Action." (Df.'s Motion [46] ¶ 42.) Defendant fails to identify facts or allegations made in the underlying DuPage County action that would give rise to Plaintiff's ADA, Labor-Management Relations Statute, or OSHA claims. In fact, Defendant recounts no facts from that case—which, recall, was an appeal from a decision to list King on the state's abuse-and-neglect registry; as LCFS's own brief explains, "at issue in the DuPage County case was the [DCFS Administrative Hearing Unit's] final administrative decision denying King's request for expungement of an indicated finding of child neglect." (Df.'s Motion [46] ¶ 34.) Rather than addressing the specifics of King's allegations in this court, LCFS generally argues that the DuPage County action resulted from the alleged sexual assault, which underlies its explanation for King's firing in this case as well. But King's allegations in this case, construed in the light most favorable to him, do not "arise" from the alleged sexual assault—with or without the assault, he alleges that he was denied accommodations, that he was fired because of a disability, and that LCFS violated a host of other laws.

The release language in the King-DCFS Agreement is much narrower than the language at issue in *Engineered Abrasives* (not cited by either side, but decided just last year by the Seventh Circuit). 882 F.3d at 651. In that case, the appellate court upheld a district court's finding that plaintiff's claims had been released pursuant to a prior agreement, which, by its terms, released all

> causes of action of every nature . . . whether known or unknown . . . which [Plaintiff] ever had, now has, or may hereinafter claim to have by reason of any matter, cause or circumstances whatsoever arising or occurring prior to and including the date of the Agreement, *including but not limited to the claims and defenses set forth in the Action*.

*Id.* at 652 (emphasis added). Unlike that release, the King-DCFS Agreement provided only for a release of claims and causes of action that arose or would arise from the "facts alleged or claims

7

made in the" DuPage County expungement action. (*See* Settlement Agreement [20], at PageID # 173 ¶ 3.)

LCFS next urges that the language of the Settlement Agreement is so broad as to bar any claim King may bring against LCFS under any law. (Df.'s Motion [46] ¶ 41.) But that argument is inconsistent with the language of the Agreement itself, and the case law LCFS relies on does not support its argument. Take *Goepfert v. Trustmark Ins. Co.*, 541 F. Supp. 2d 1052, 1055 (E.D. Wis. 2008), for example. In that case (a district court decision not binding on this court), the court determined that an employee's ERISA claim fell within the language of a prior release the employee had signed as part of a separation agreement with his former employer. In that agreement, the plaintiff had released "claims of discrimination under any Federal, state or local law . . . including (without limitation) . . . the Employee Retirement Income Security Act of 1974 . . . ." *Id.* The district court thus determined that "the Release expressly cover[ed] plaintiff's ERISA claim," and that the plaintiff's ERISA claims were, therefore, "within the scope of the release." *Goepfert*, 541 F. Supp. 2d at 1055. The release King signed, in contrast, made no mention of a discrimination claim and included no reference to the statutes he invokes here. The Agreement's silence on those matters is particularly significant in light of the fact that this case was pending when it was signed.

Nor does the Settlement Agreement meet the requirements for *res judicata*, as Defendant suggests. "*Res judicata* bars a claim that was 'litigated or could have been litigated in a previous action when three requirements are met: (1) an identity of the causes of action; (2) an identity of the parties or their privies; and (3) a final judgment on the merits.'" *Kilburn-Winnie v. Town of Fortville*, 891 F.3d 330, 332–33 (7th Cir. 2018) (quoting *Bell v. Taylor*, 827 F.3d 699, 706 (7th Cir. 2016)) (modifications in original). As explained above, Defendant has failed to articulate how this case arises from King's appeal of the neglect citation. Again, the case law Defendant cites is unpersuasive. *See Hallie v. Wells Fargo Bank, N.A.*, No. 2:12-CV-00235-PPS, 2015 WL

1914864, at *3 (N.D. Ind. Apr. 27, 2015); *ADM All. Nutrition, Inc. v. SGA Pharm Lab, Inc.*, No. 16-CV-2042, 2016 WL 10894484, at *8 (C.D. Ill. Feb. 5, 2016), *aff'd*, 877 F.3d 742 (7th Cir. 2017). In *Hallie*, the district court granted a Rule 12(c) motion based on *res judicata*, when a class member failed to opt out of a class settlement and then brought a separate suit involving claims that the parties agreed fell under the umbrella of the settlement. 2015 WL 1914864 at *3. Here, whether King's claims fall under the settlement agreement is precisely what is at issue. And, in *ADM*, a settlement agreement contained language releasing the defendants from any claims "arising out of, related to, or in connection with the [there-pertinent] Purchase and Development Agreement." 2016 WL 10894484, at *8. After signing the agreement, the plaintiffs nevertheless proceeded to sue based on the Purchase and Development Agreement. 2016 WL 10894484, at *8. The district court determined that the plaintiffs' claims were covered by the "clear and unambiguous language included in [a prior] Settlement Agreement." *Id.* The court is not so convinced here.

## CONCLUSION

Plaintiff signed a Settlement Agreement in which he released DCFS and its agents for any claims arising from the administrative review action he filed in DuPage County. The claims he brings in this lawsuit do not clearly arise from the same facts or allegations as that action. The court concludes the release does not bar the claims he asserts in this lawsuit and therefore need not decide whether LCFS is an agent of DCFS, entitled to enforce the release. Defendant's motion for judgment on the pleadings [46] is denied.

ENTER:

Dated: May 20, 2019

REBECCA R. PALLMEYER
United States District Judge