**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **DAVID KING,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **No. 18 C 309** |
| | ) | |
| **LUTHERAN CHILD AND FAMILY** | ) | **Judge Rebecca R. Pallmeyer** |
| **SERVICES OF ILLINOIS, an Illinois** | ) | |
| **not-for-profit corporation,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**MEMORANDUM OPINION AND ORDER**

From July 2015 until the following April, Plaintiff David King worked for Defendant Lutheran Child and Family Services of Illinois ("LCFS") as a Child Care Worker in one of LCFS's residential centers for children and adolescents with emotional and behavioral difficulties. On April 4, 2016, during Plaintiff's overnight shift at the residential center, a youth in the unit Plaintiff was monitoring was allegedly sexually assaulted. Believing that Plaintiff had fallen asleep when the incident occurred, LCFS terminated Plaintiff's employment that same day. Plaintiff says that he has schizoaffective disorder, which causes symptoms including delusions, hallucinations, depressed episodes, and manic periods, and which he manages with medication that causes drowsiness. (2d Am. Compl. [22] at 2; Pl.'s Mem. in Supp. Mot. for Summ. J. ("Pl.'s MSJ") [104] at 2.) In this court, Plaintiff claims that LCFS terminated his employment due to his disability and that LCFS failed to accommodate his schizoaffective disorder in violation of the Americans with Disabilities Act ("ADA").

Both parties now move for summary judgment on Plaintiff's ADA claims [104, 105]. Plaintiff has also moved to "dismiss" Defendant's response to his motion for summary judgment and has moved to compel further discovery [113]. For the reasons stated below, Mr. King's motions for summary judgment [104] and to dismiss and compel [113] are denied, and LCFS's motion for summary judgment [105] is granted.

## BACKGROUND

### I.     Local Rule 56.1

Consistent with the court's Local Rules, Defendant LCFS filed a Local Rule 56.1(a)(3) statement of undisputed facts [107], citing supporting evidentiary material in the record, together with its motion for summary judgment. *See* N.D. Ill. L.R. 56.1(a)(3).   Also as required, Defendant provided Plaintiff with the Local Rule 56.2 Notice [109], explaining in detail the requirements of Local Rule 56.1 and warning Mr. King that noncompliance with the relevant rules could lead to the admission of LCFS's version of the facts.   Litigants proceeding *pro se* are entitled to lenient standards, but the court does require compliance with procedural rules. *Cady v. Sheahan*, 467 F.3d 1057, 1061 (7th Cir. 2006); *Koszola v. Bd. of Educ. of the City of Chicago*, 385 F.3d 1104, 1108 (7th Cir. 2004); *McNeil v. United States*, 508 U.S. 106, 113 (1993); *Coleman v. Goodwill Indus. of Se. Wis., Inc.*, 423 F. App'x 642, 643 (7th Cir. 2011) ("Though courts are solicitous of *pro se* litigants, they may nonetheless require strict compliance with local rules.").

Despite the warning, Plaintiff failed to respond to Defendant's statement of facts in the manner required by Local Rule 56.1.   Rather, he responded to some of LCFS's factual contentions and made other factual assertions in his response brief [111]. *See Perez v. Town of Cicero*, No. 06 C 4981, 2011 WL 4626034, at *2 (N.D. Ill. Sept. 30, 2011) ("[F]acts asserted in a brief but not presented in a Local Rule 56.1 statement are disregarded in resolving a summary judgment motion.").   Plaintiff subsequently filed a separate motion disputing Defendant's assertion that he failed to follow the local rules.   (Mot. to Dismiss & Compel [113] at 1–2.)   Neither that motion nor Plaintiff's own response to Defendant's motion is in a format that complies with Local Rule 56.1 (that is, short numbered paragraphs with references to materials in the record).   N.D. ILL. L.R. 56.1(b)(3).   And while Plaintiff's motion for summary judgment [104] states that it contains a statement of facts (*see* Pl.'s MSJ at 1), the court finds no such statement of facts included with his motion or the numerous attached exhibits.

Facts set forth in Defendant's Local Rule 56.1(a)(3) statements to which Plaintiff did not effectively respond are deemed admitted to the extent they are supported by evidence in the record. *See Keeton v. Morningstar, Inc.*, 667 F.3d 877, 880, 884 (7th Cir. 2012). The court has considered the factual assertions Plaintiff makes in his responses, but only to the extent he has pointed to evidence in the record or could properly testify himself about the matters asserted.

## II.  Material Facts

King began working for LCFS as a Child Care Worker at its Lutherbrook Child and Adolescent Center ("Lutherbrook") in July 2015. (Def.'s Local Rule 56.1 Statement of Facts ("Def.'s SOF") [107] ¶¶ 3–4, 21.) Lutherbrook is a residential care and treatment center for children and adolescents with emotional and behavioral difficulties. (*Id.* ¶ 3.) The job description for the Child Care Worker position stated that King would need to provide "direct care, treatment, and supervision of assigned children," and that he would be "in continuous contact with emotionally and behaviorally challenged children." (*Id.* ¶ 4.) The job description further stated that Child Care Workers were expected to assist in crises and warned that they must be able to work in stressful situations. (*Id.* ¶ 5.) After offering King the job in May 2015, but before he began work, LCFS required King to complete three tasks: provide LCFS with a copy of his college transcripts; pass a pre-employment physical, drug test, and background check; and provide proof of eligibility to work in the United States. (*Id.* ¶ 11.) LCFS also informed Mr. King that his employment could be terminated if he was unable to provide college transcripts by October 30, 2015. (*Id.* ¶ 12.)

King completed his pre-employment physical and drug test on June 1, 2015 at Alexian Brothers Medical Group in Addison, Illinois. (*Id.* ¶ 14.) The policies of LCFS and the Illinois Department of Children and Family Services ("DCFS") required the examining physician to complete a "Medical Report on an Adult in a Child Care Facility" ("Medical Report"). (*Id.* ¶ 15.) This Report included several questions, including whether King had any "medical or emotional problems or conditions . . . which may affect [his] ability to work, volunteer or reside in a facility

caring for children," and whether King was "medically and emotionally fit to work, volunteer or reside in a facility caring for children." (*Id.* ¶¶ 15–16; *see also* Medical Report, Ex. 6 to Def.'s SOF.) King's examining physician reported that he had no conditions that would affect his ability to work for LCFS and that he was fit to work in a facility caring for children; the physician concluded that Mr. King "[m]ay work without restrictions." (Def.'s SOF ¶ 16.) The physician sent the Medical Report to LCFS along with test results from his physical examination, the results of a tuberculosis test, and results from Mr. King's drug screen. (*Id.* ¶ 17.) The President and CEO of LCFS, Mike Bertrand, attested that LCFS never received specific medical records identifying any physical or mental health condition for which Mr. King would require accommodation. (*Id.*; *see also* Bertrand Aff. ¶¶ 7–8, Ex. 7 to Def.'s SOF.) Bertrand further stated that LCFS did not require its employees to fill out forms asking them to identify any disabilities they might have. (Def.'s SOF ¶ 19; Bertrand Aff. ¶¶ 9–10.)

King did not provide his college transcripts by the October 2015 deadline. Another LCFS employee, Andrew Crews, notified King in November 2015 that he would be moved to a role as an overnight Child Care Worker from his daytime role if he failed to produce his transcripts by November 11 (a modification of the initial warning that failure to provide the transcripts would result in termination). (Def.'s SOF ¶¶ 22–23.) King acknowledged receiving the notice of potential reassignment (*id.* ¶ 23), but did not produce his transcripts by November 11 and was reassigned to the overnight shift. (*Id.* ¶ 25.) The requirements for the overnight assignment were essentially the same as for the daytime Child Care Worker position; LCFS asserts that King was responsible for supervising the residents on his assigned unit and for "assuring safety and security during the overnight hours and morning routine." (*Id.* ¶ 26 (citing Def.'s Ans. [45] at 8).) Plaintiff acknowledged during his deposition that his role at Lutherbrook was to "make sure that [the kids] don't hurt each other—that they don't hurt each other, they don't hurt themselves." (King Dep. 197:22–198:2, Ex. 1 to Def.'s SOF.)

4

Soon after moving to the overnight role, Plaintiff was reprimanded for violating LCFS policies. In February 2016, LCFS issued an "informal warning" because Plaintiff had been late to work twice in one two-week payroll period. (Def.'s SOF ¶ 29; LCFS Warnings at 2, Ex. 10 to Def.'s SOF.) Plaintiff signed this warning on February 24, 2016. (*Id.*) Then, on March 7, 2016 LCFS issued a "final warning" after Plaintiff fell asleep during his shift. (Def.'s SOF ¶ 30.) The document explains that employees had been warned during orientation against sleeping while on duty because doing so would create a hazardous environment for the youths in the center. (LCFS Warnings at 1.) The document also informed Plaintiff that he "would be subject to discharge from his position at the agency" if he again fell asleep at work. (*Id.*) Plaintiff denies that he was asleep on the day in question, but acknowledges his signature confirming that he reviewed the document. (King Dep. 186:15–17.) Plaintiff also denies knowing that he could object to the warning despite having seen the space for "employee comments" on the warning letter. (*Id.* 187:4–188:7.)

On April 4, 2016, LCFS fired Plaintiff from his position as a Child Care Worker. (Def.'s SOF ¶ 36.) In Defendant's version of the events, Plaintiff again fell asleep during his shift. (*Id.*) Because Plaintiff was asleep, he failed to complete rounds of the unit or monitor its residents, and during the time that Plaintiff was sleeping, a youth resident was allegedly sexually assaulted. (*Id.*) Plaintiff denies that he was asleep during his shift, but admitted to being drowsy and acknowledged that he did nothing as a youth walked through the hallway with a sheet over his head and entered a bedroom. (*Id.* ¶ 37.) Plaintiff asserted that he did not question the child or otherwise engage with him because Plaintiff was "improperly ratioed out," meaning, as the court understands it, that the facility was operating at an inadequate or otherwise improper resident-to-staff ratio. (*Id.*) Plaintiff testified that after the alleged assault occurred, the youth who had allegedly been assaulted told Plaintiff what had happened. (King Dep. 221:5–7.) Plaintiff and the youth went to talk to an LCFS supervisor, but Plaintiff did not report the incident to DCFS despite being required to do so as a mandated reporter. (*Id.* 221:11–16; Def.'s SOF ¶ 39.) Plaintiff testified that he did not report the incident to DCFS because a supervisor told him not to do so

and Plaintiff feared he would lose his job if he reported.  (Def.'s SOF ¶ 39.)  Moreover, Plaintiff believed that the youth was lying about having been assaulted.  (King Dep. 220:2–221:4.)

Plaintiff states in his briefs that he has been diagnosed with schizoaffective disorder and that the medications he takes to treat this condition make him drowsy.  (Pl.'s MSJ at 2; *see also* Def.'s SOF ¶ 44.)  During his deposition, Plaintiff acknowledged that he did not initially request accommodation from LCFS, but claims that he did so later in his employment.  (Def.'s SOF ¶ 35.)  The details of when and how Plaintiff made this request are sketchy.  Plaintiff testified that he filled out a "Form CC-305: Voluntary Self-Identification of Disability" (a form created by the Department of Labor for federal contractors and subcontractors) when he first began employment with LCFS.  (*Id.* ¶¶ 45, 49.)  Plaintiff initially testified that he disclosed his schizoaffective disorder diagnosis on this form and requested, as an accommodation, that he be permitted to visit his doctor to obtain a doctor's note.  (*Id.* ¶ 48.)  Plaintiff subsequently recanted most of this testimony, other than to say that he filled out Form CC-305 and checked a box that said "yes, I have a disability."  (*Id.* ¶ 51.)  Plaintiff acknowledges that he never made a written request for an accommodation to anyone at LCFS.  (*Id.* ¶ 34.)  He claims, however, that at some point, he made an oral request: specifically, extra staff to help cover his shift.  (*Id.* ¶ 35.)  His supervisor rejected this request, according to Plaintiff, because LCFS was "cheap."  (*Id.*)

## LEGAL STANDARD

Plaintiff has sued LCFS under the ADA for disability discrimination based on the termination of his employment and for failure to accommodate his disability.  Both parties now move for summary judgment on the ADA claims.[1]  Summary judgment is appropriate if there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of

---

[1]  Plaintiff's motion for summary judgment discusses claims brought under the Americans with Disabilities Act, 42 U.S.C. §§ 12112(b) and 12111(9), and the Fair Labor Standards Act.  By earlier order, however, this court dismissed all but Mr. King's ADA claims.  (*See* July 30, 2018 Order Denying Mot. to Dismiss [27], *as clarified*, Sept. 27, 2018 Order [40] (confirming during hearing that only Plaintiff's ADA claims survived Defendant's motion to dismiss).)

law.  FED. R. CIV. P. 56(a).  A genuine dispute of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The party moving for summary judgment bears an initial burden of proving the absence of such a dispute.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).  When the nonmovant bears the ultimate burden of proof at trial on a particular issue, however, the party moving for summary judgment need not "support its motion with affidavits or other similar materials *negating* the opponent's claim."  *Id.* at 323 (emphasis in original).  Rather, the movant may discharge its initial burden by showing "that there is an absence of evidence to support the nonmoving party's case."  *Id.* at 325.  "Upon such a showing, the nonmovant must then 'make a showing sufficient to establish the existence of an element essential to that party's case.'"  *Modrowski v. Pigatto*, 712 F.3d 1166, 1168 (7th Cir. 2013) (quoting *Celotex*, 477 U.S. at 322).  When ruling on a motion for summary judgment, a court views the record in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor. *Anderson*, 477 U.S. at 255; *but see Skiba v. Ill. Cent. R.R. Co.*, 884 F.3d 708, 721–22 (7th Cir. 2018) (inferences "supported by only speculation or conjecture" will not suffice).

## DISCUSSION

The ADA prohibits discrimination on the basis of disability:  "No covered entity shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment."  42 U.S.C. § 12112(a).  Discrimination within the meaning of this section includes "disparate treatment and failure to accommodate."  *Scheidler v. Indiana*, 914 F.3d 535, 541 (7th Cir. 2019) (emphasis omitted) (quoting 42 U.S.C. § 12112(b)(5)(A) ("not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee . . . .")).  Plaintiff alleges both that he was discriminated against on the basis of his disability and that Defendant failed to reasonably accommodate his disability.

I.      **Defendant's Motion for Summary Judgment**

A.      **Disparate Treatment on the Basis of Disability**

In a disparate treatment claim, "the plaintiff alleges the employer treated him or her differently because of the plaintiff's disability." *Tonyan v. Dunham's Athleisure Corp.*, 966 F.3d 681, 687 (7th Cir. 2020).  To state a claim for disparate treatment on the basis of a disability, a plaintiff must show that (1) he is disabled, (2) he was qualified to perform the essential functions of his job with or without a reasonable accommodation, and (3) his disability was the "but for" cause of an adverse employment action.  *Scheidler*, 914 F.3d at 541 (citations omitted).  LCFS argues that Mr. King has failed to produce evidence that he has a disability, that LCFS was aware of or had reason to know of his disability, that he was terminated for his impairment, or that he was otherwise capable of performing the essential functions of his job.  (Def.'s Mem. in Supp. Mot. Summ. J. ("Def.'s MSJ") [106] at 2.)

1.      **Is Mr. King Disabled?**

Mr. King asserts that he has schizoaffective disorder.  As LCFS notes, however, Plaintiff has not provided any authenticated medical records that support this diagnosis.  The document he has submitted is a medical record that includes the results of lab tests and drug tests, and includes some reference to Mr. King's medical history, a record completed during his pre-employment physical for LCFS.[2]  (*See* Pl.'s Exs. D ~ 8–12, at page ID 1203-07); Pl.'s MSJ at 6.)  Assuming that Plaintiff does suffer from schizoaffective disorder, Defendant contests that Plaintiff has established that the condition is a disability as that term is used in the ADA.  (Def.'s MSJ at 5–8.)  The ADA defines "disability" as "a physical or mental impairment that substantially limits

---

[2]      In his response brief, Mr. King also asserts that he has received Social Security Disability Insurance (Plaintiff's unauthenticated Exhibit E ~ 10 shows those benefits were received in 2008–10 and 2019) and was involuntarily committed in 2000 or 2002 (Pl.'s Resp. [111] at 2).  These events were not close in time to Plaintiff's termination by LCFS, and "facts asserted in a brief but not presented in a Local Rule 56.1 statement are disregarded in resolving a summary judgment motion."  *Perez*, 2011 WL 4626034, at *2.  Plaintiff has offered no evidence showing that he made LCFS aware of these events before his termination, and he did not produce the relevant documents to LCFS during discovery.  (Def.'s Resp. [112] at 11–12.)

one or more major life activities of such individual," "a record of such an impairment," or "being regarded as having such an impairment." 42 U.S.C. § 12102(1)(A)–(C). In this Circuit, schizoaffective disorder has previously been found to be a condition that substantially limits major life activities such as working or thinking. *See, e.g., Brown v. Ill. Cent. R.R. Co.*, 254 F.3d 654, 656 (7th Cir. 2001); *Palmer v. Circuit Ct. of Cook Cty.*, 117 F.3d 351, 352 (7th Cir. 1997); *Bultemeyer v. Fort Wayne Cmty. Sch.*, 100 F.3d 1281, 1284 (7th Cir. 1996); *see also* 29 C.F.R. § 1630.2(j)(3)(iii). Plaintiff has not produced evidence that he in fact suffers from this disorder, but because the court can decide this case without reaching the issue, it will assume for the purposes of this motion that Plaintiff has a disability.

### 2. Did LCFS Know of Mr. King's Schizoaffective Disorder?

LCFS denies that it knew when it fired Mr. King that he had schizoaffective disorder. LCFS emphasizes that "an employee cannot hold an employer liable under the ADA if the employer has no knowledge of the employee's disability." *Spurling v. C & M Fine Pack, Inc.*, 739 F.3d 1055, 1061 (7th Cir. 2014); *see also Hedberg v. Ind. Bell Tel. Co.*, 47 F.3d 928, 932 (7th Cir. 1995). LCFS notes that the only medical information it had about Mr. King was the June 2015 pre-employment Medical Report from a physician at Alexian Brothers—a four-page document that makes no mention of Mr. King's medical records and notes only that Mr. King may need to follow up with his physicians regularly. (Medical Report at 2 (Def.'s SOF, Ex. 6 [107-1] at page ID 1652.) Nothing in this Medical Report alerted LCFS that Mr. King has schizoaffective disorder or any disabling condition. The examining physician reported that Plaintiff had no "medical or emotional problems or conditions . . . which may affect the individual's ability to work, volunteer or reside in a facility caring for children," and that Plaintiff was "medically and emotionally fit to work, volunteer or reside in a facility caring for children." (Def.'s SOF ¶¶ 15–16.) The doctor also cleared Plaintiff to "work without restrictions." (*Id.* ¶ 16.)

Plaintiff insists that Defendant nevertheless did know he had schizoaffective disorder.[3] The evidence does not support this claim. First, Plaintiff contends that Defendant must have obtained and retained in its personnel files Plaintiff's detailed medical records completed during the pre-hire examination that reflect his condition and his need for medication. (Pl.'s MSJ at 6.) Plaintiff provides no evidence beyond his own supposition, however, that Defendant received these medical records, such as a confirmation from the doctor or Plaintiff's own testimony. The President and CEO of LCFS, Mike Bertrand, averred that LCFS never received detailed medical records. (Bertrand Aff. ¶ 8.) LCFS did receive the brief Medical Report, but that report includes the information described earlier—not Plaintiff's detailed medical history. (*Id.* ¶¶ 4–8.) There is no admissible evidence that LCFS in fact received medical records referring to schizoaffective disorder.

Plaintiff has offered no evidence that he disclosed his specific condition even when he claims to have asked his supervisor for extra staff as an accommodation for his disability. (King Dep. 74:3–75:5.) He claimed to have self-identified as having schizoaffective disorder, but recanted that testimony and stated at his deposition that when he began working for LCFS, he disclosed a disability in an employment form. Specifically, Plaintiff insists that at the start of his employment with LCFS, he completed Form CC-305, a federal form asking employees to voluntarily disclose any disabilities. (Def.'s SOF ¶¶ 45, 49.) Plaintiff contends that LCFS must have asked him to complete a Form CC-305 because all federal contractors are required to maintain such forms for their employees. (Pl.'s MSJ at 4, 6–7.) The President and CEO of LCFS denies that LCFS asks its employees to fill out any form asking them to identify disabilities, including Form CC-305. (Bertrand Aff. ¶¶ 9–13.) LCFS also denies being a federal contractor; it

---

[3] In his motion for summary judgment, Plaintiff states that in November 2015 he told Louis Zaino, the Director of Residential Services, that he could not work overnight because of "medication concerns and would need a reasonable accommodation[ ]." (Pl.'s MSJ at 2.) Plaintiff did not mention this conversation in his deposition and otherwise offered no evidence to support that he told Zaino of his disability in November 2015.

admits to receiving federal grants, but notes that receiving federal funds does not by itself qualify LCFS as a federal contractor. (Def.'s MSJ at 10.) And Plaintiff admits that, of the eleven current and former LCFS employees he spoke to regarding Form CC-305, none recalled having filled out that form when they began employment with LCFS. (Def.'s SOF ¶ 50.) Viewing the record in the light most favorable to Plaintiff, including his testimony that he at some point asked for an accommodation, there is at most a factual dispute regarding whether LCFS knew he suffered from some unidentified disability at the time it terminated his employment. There is no basis in the record for an inference that LCFS knew that Plaintiff had schizoaffective disorder.

### 3. Was Mr. King Able to Perform the Essential Functions of His Job?

Assuming that Plaintiff notified LCFS at the start of his employment that he had a disability, Plaintiff bears the burden of showing he was nevertheless able to perform the essential functions of his job with or without a reasonable accommodation. *See Stern v. St. Anthony's Health Ctr.*, 788 F.3d 276, 285 (7th Cir. 2015) (quoting 42 U.S.C. § 12111(8)). The Seventh Circuit employs a two-step test to determine whether someone is "qualified." *See Majors v. Gen. Elec. Co.*, 714 F.3d 527, 533–34 (7th Cir. 2013). The court first considers "whether the individual satisfies the prerequisites for the position, such as possessing the appropriate educational background, employment experience, skills, licenses, etc." *Stern*, 788 F.3d at 285 (quoting *Basith v. Cook Cty.*, 241 F.3d 919, 927 (7th Cir. 2001)); *see also* 42 U.S.C. § 12111(8); 29 C.F.R. § 1630.2(m). If so, the court determines whether "the individual can perform the essential functions of the position held or desired, with or without reasonable accommodation." *Stern*, 788 F.3d at 285 (quotation omitted). The primary dispute here is whether Plaintiff was capable of performing the essential functions of his job.

To determine whether a particular duty is essential, the court considers "the employer's judgment, the amount of time performing the function at issue, the work experience of prior employees in the same position, and written job descriptions." *E.E.O.C. v. AutoZone, Inc.*, 809 F.3d 916, 919 (7th Cir. 2016); *see also* 29 C.F.R. § 1630.2(n)(3). The court does not "second-

guess the employer's judgment in describing the essential requirements for the job." *Tonyan*, 966 F.3d at 687; *see also Gratzl v. Office of Chief Judges of 12th, 18th, 19th, & 22nd Judicial Circuits*, 601 F.3d 674, 679 (7th Cir. 2010) ("We presume that an employer's understanding of the essential functions of the job is correct, unless the plaintiff offers sufficient evidence to the contrary."). LCFS, citing the written job description for Plaintiff's position, states that as a Child Care Worker, Plaintiff was responsible for providing "direct care, treatment, and supervision of assigned children" and "creat[ing] and implement[ing] a therapeutic milieu for all children." (Def.'s SOF ¶ 4; Job Description at 1, Ex. 2 to Def.'s SOF.) Child Care Workers are "in continuous contact with emotionally and behaviorally challenged children," and the job description notes that the duties require "physical exertion and constant alertness." (*Id.*) Child Care workers must also meet certain physical and other demands. (Def.'s SOF ¶¶ 4–5.) They must be able to "provide assistance during crises [*sic*] situations which may include physical restraint of students up to 18 years old," "ability to sit approximately 20% and 80% [*sic*] while performing required duties," and "ability to work in situations that may be deemed stressful." (*Id.* ¶ 5.) Mr. King does not dispute that these were requirements of his job.

LCFS contends that Mr. King was not able to perform these essential functions because of his repeated tardiness and sleeping at work, and because Plaintiff failed to report the alleged sexual assault to DCFS. (Def.'s MSJ at 12–13.) Plaintiff contends he was capable of doing the work with an accommodation; though he did not need one when he first started working for LCFS, he testified that he did need an accommodation at some point later on (King Dep. 75:1–2), because the medication to treat schizoaffective disorder made him drowsy. (Pl.'s MSJ at 2, 4–8.) The only potential accommodation Plaintiff identified that would enable him to perform his job duties was that LCFS could have hired additional staff to help cover his shift.[4] (Def.'s SOF ¶ 35; King Dep. 74:16–21.)

---

[4] Plaintiff argues that his exhibit D ~ 172 shows that a coworker, Donna Shelby, admitted under oath during an administrative hearing that Plaintiff asked for an accommodation.

Plaintiff cannot make a showing that he could perform the essential duties of his job with a reasonable accommodation if "the only accommodation [he] has ever suggested is not reasonable." *Gratzl*, 601 F.3d at 680; *see also Majors*, 714 F.3d at 534. Reasonable accommodations in a workplace are "[m]odifications or adjustments to the work environment, or to the manner or circumstances under which the position held or desired is customarily performed, that enable an individual with a disability who is qualified to perform the essential functions of that position." 29 C.F.R. § 1630.2(o)(1)(ii). Such accommodations may include, among others, job restructuring, modified work schedules, reassignment to a vacant position, modified equipment, or appropriate adjustments to policies. 42 U.S.C. § 12111(9); 29 C.F.R. § 1630.2(o)(2)(ii).

Plaintiff's testimony that he requested an accommodation at all was vague and inconsistent. He again asserted that he had disclosed his disability in the Form CC-305 but, as described above, there is no evidence that he ever informed his supervisor of his specific diagnosis. He also described having asked a previous employer to accommodate him by permitting him to contact his doctor to communicate with the employer about his needs, and asserted that he asked LCFS for the same "accommodation." (*Id.* 80:2–12 (testifying that he disclosed on a form "that I need my doctor").) The only more specific request he claims to have made is that LCFS "just follow the rules and that I have extra staff." (*Id.* 73:7–74:16, 76:22–23.) Plaintiff later recanted that testimony and confirmed that he never requested an accommodation from LCFS in writing. (Def.'s SOF ¶¶ 34, 51; King Dep. 98:7–11 ("for the record, I would like to go back on everything I said before stating that I signed the sheet that says, yes, I have a disability"), 103:8–24.) Plaintiff also testified that he requested from a supervisor, Theresa Coleman, extra staff to help cover his shift, and was told that LCFS would not do that because it was "cheap." (King Dep. 74:16–21, 80:12–15, 297:14–21.) Viewing the record in the light most

---

In the exhibit, an unidentified speaker states "we have asked for extra staff due to, you know, this client acting out because of how violent he was. And they would never—they would never accommodate him." (Ex. D ~ 172 to Pl.'s MSJ.) This statement, even were it admissible, does not support that Plaintiff requested an accommodation for a disability.

favorable to Mr. King, there is evidence that he orally requested as an accommodation the provision of extra staff, but it is not clear from the portions of his deposition in the record when he made this request (*see id.* 74:16–21, 75:1–76:4, 103:15–23 (testifying that he made the request for additional staff at the time he applied; that he made it "several times" during his employment, or that the request is not in writing but is "in a text message from after I worked there").)  In his summary judgment submissions, Plaintiff points to no other potential accommodations that could have allowed him to perform his job duties.

Analysis of whether Mr. King was qualified to do his job with a reasonable accommodation necessarily overlaps with the question of whether LCFS failed in any obligation it had to provide such an accommodation.  The answer to both of those questions is no.  To the extent Mr. King requested additional staff as an accommodation to his disability, that accommodation is not a reasonable one.  *See Stern*, 788 F.3d at 295 (citing *Spurling*, 739 F.3d at 1062; *Basden v. Prof'l Transp., Inc.*, 714 F.3d 1034, 1039 (7th Cir. 2013); *Majors*, 714 F.3d at 535).  Mr. King does not dispute that supervising the children in the unit and ensuring their safety overnight was an essential function of his job as a Child Care Worker.  (King Dep. 197:24–198:2.)  He suggests that LCFS was out of compliance with staff ratios, but to the extent he believes LCFS should have hired additional staff to accommodate him, it appears Mr. King simply wanted another employee to take over his unit supervision duties—a change in the essential functions of his position.  *See* 29 C.F.R. § 1630.2(n)(2)(i) ("[A] function may be essential because the reason the position exists is to perform that function.").  The ADA does not require employers to make such accommodations.  The Seventh Circuit has "repeatedly held" that "[t]o have another employee perform a position's essential function, and to a certain extent perform the job for the employee, is not a reasonable accommodation."  *Stern*, 788 F.3d at 289 (quotation omitted); *see also Majors*, 714 F.3d at 534 (quoting *Cochrum v. Old Ben Coal Co.*, 102 F.3d 908, 912 (7th Cir. 1996)) ("employee's suggested accommodation of hiring a helper to perform an essential function of the job, the overhead work required by the position, was not a reasonable accommodation.").

14

Because Mr. King's suggested accommodation is not reasonable as a matter of law, he has failed to raise an issue of fact regarding whether he was qualified to perform the essential functions of his job, with or without an accommodation.

### 4. Was Mr. King Terminated on the Basis of his Disability?

If Mr. King could establish he that he was qualified for his position as a Child Care Worker, he would bear the burden of presenting evidence from which a reasonable jury could find he was fired on the basis of a disability. A plaintiff may show that disability discrimination was the "but for" cause of his termination using direct evidence, such as an admission by his employer, or circumstantial evidence. *Monroe v. Ind. Dep't of Transp.*, 871 F.3d 495, 504 (7th Cir. 2017). Circumstantial evidence includes:

> (1) suspicious timing; (2) ambiguous statements or behavior towards other employees in the protected group; (3) evidence, statistical or otherwise, that similarly situated employees outside of the protected group systematically receive better treatment; and (4) evidence that the employer offered a pretextual reason for an adverse employment action.

*Id.* (quoting *Bunn v. Khoury Enters., Inc.*, 753 F.3d 676, 684 (7th Cir. 2014)); *see also Kurtzhals v. Cty. of Dunn*, 969 F.3d 725, ___, 2020 WL 4580550, at *3 (7th Cir. 2020) (the question to ask is "could a reasonable juror conclude that [plaintiff] would not have suffered the same adverse employment action if he were not disabled and everything else had remained the same?") (citations omitted).

LCFS asserts that it fired Mr. King for falling asleep during his shift on April 4, 2016, and that while Mr. King was asleep, one of the youths under his care was allegedly sexually assaulted. (Def.'s MSJ at 13.) Mr. King acknowledges that, at the time he was fired, he was told it was due to poor performance in neglecting his duties by sleeping at work and failing to conduct rounds of the area he was monitoring. (King Dep. 195:12–16.) King, however, believes he was actually terminated because LCFS was trying to hide the investigation of this assault from DCFS. (*Id.* 195:23–196:1.) Based on directions he claims to have heard from former colleagues, Plaintiff also suggests he believed he might be fired in retaliation for having reported the incident. (*Id.*

218:9–14.)  Plaintiff further asserts, again based solely on hearsay statements, that the alleged sexual assault victim fabricated his story for the purpose of getting Plaintiff fired.  (Pl.'s MSJ at 3.)

On the night that King was fired, he was sitting in a chair, monitoring the hallway to ensure the children were safe while sleeping in their rooms (King Dep. 197:14–21, 198:8–15), when a child entered the hallway directly in front of King with a sheet over his head, entered the bedroom of another child, and then allegedly sexually assaulted that child.  (Def.'s SOF ¶¶ 36–37.) According to Defendant, video evidence (not in the record) shows that Plaintiff was asleep at the time this occurred, and that he had not completed the required rounds.  (*Id.* ¶ 36.)  Moreover, Mr. King was a mandated reporter[5] but did not report the alleged sexual assault to DCFS as required. (*Id.* ¶ 39.)  Plaintiff disputes that he was asleep at the time of the alleged assault, but does not dispute that he failed to intervene as the youth walked down the hall and entered the bedroom of another resident.  (King Dep. 196:15–19, 198:16–199:2, 202:22–204:7.)  Plaintiff testified that he did not stop the individual with the sheet on his head or ask what he was doing because there was an improper staff-to-child ratio on the unit at the time.  (*Id.* 199:2–5.)  Plaintiff claims his supervisor had told him not to engage with children if "you are out of ratio."  (*Id.* 199:21–23.) Asked at his deposition, "So you believe that it was your responsibility as an overnight childcare worker to allow children to roam the hallway with sheets over their heads in the early hours of the morning if you felt the ratio was incorrect?" Plaintiff answered, "Yes."  (*Id.* 199:24–200:5.)  Plaintiff also conceded that he did not report the alleged assault to DCFS despite recognizing that he was required to do so as a mandated reporter.  (*Id.* 213:10–215:5.)  Plaintiff testified that a supervisor told him to report the incident to that supervisor instead of reporting to DCFS.  (*Id.* 215:18–22.)

The incident involving the alleged sexual assault occurred after an escalating series of workplace infractions beginning months after Plaintiff was hired.  In November 2015, Mr. King was reminded in writing that he needed to provide his college transcripts to continue working as

---

[5]     *See* 325 ILCS 5/4(a)(6).

a daytime Child Care Worker.  (*See* LCFS Warnings at 3.)  Plaintiff did not produce his transcripts by the November 11 deadline and so was moved to an overnight position.  In February 2016, LCFS gave Plaintiff an informal warning for being late to work.  (*Id.* at 2.)  The warning explains LCFS policy that tardiness three times within a 90-day period may result in disciplinary action including another warning, possible suspension, or termination.  (*Id.*)  Finally, there was an incident involving sleeping during his shift in March 2016.  At that time, LCFS issued a final warning to Mr. King for "fail[ing] to properly execute his work responsibilities by falling asleep during his shift."  (*Id.* at 3.)  The warning noted that "CCW [Child Care Worker] positions at the agency serve a vital role in ensuring the safety of youths residing within the facility," and that "[s]leeping during shifts creates a hazardous environment for our youths."  (*Id.*)  Mr. King was further warned that "[s]hould a similar incident occur David would be subject to discharge from his position at the agency."  (*Id.*)

The Seventh Circuit "has drawn a distinction between an employee's disability and workplace misconduct resulting from that disability."  *Tate v. Ancell*, 551 F. App'x 877, 885 (7th Cir. 2014) (citations omitted).  An employee may be terminated from employment for violations of workplace policy even if the violations "occurred under the influence of a disability."  *Pernice v. City of Chicago*, 237 F.3d 783, 785 (7th Cir. 2001).  Assuming that Plaintiff's drowsiness and inaction on the night of the alleged assault are attributable to his schizoaffective disorder—or more precisely, to the medications used to treat that condition—the Seventh Circuit has made clear that "if an employer fires an employee because of unacceptable behavior, the fact that that behavior was precipitated by a mental illness does not present an issue under the ADA."  *Scheidler*, 914 F.3d at 542 n.6 (alterations omitted) (quoting *Palmer*, 117 F.3d at 352); *see also Brumfield v. City of Chicago*, 735 F.3d 619, 630–31 (7th Cir. 2013) (listing cases). For the reasons explained earlier, the record does not support an inference that LCFS knew Mr. King's disability could lead to sleepiness during his shift; there is no evidence that Plaintiff told anyone at LCFS about his specific diagnosis or that the medications he took to treat that condition made him

drowsy.  And viewed as a whole, the record confirms that Mr. King was terminated from his role as a Child Care Worker because he was not fulfilling the requirements of that position.  Plaintiff was reprimanded more than once for poor work performance.  Even if, as Plaintiff insists, he was not asleep on the night of April 4, 2016, there is no evidence that LCFS did not genuinely believe that he was.  And LCFS's assessment of his performance is confirmed by his own testimony that he believes it was not his responsibility to prevent children from wandering the unit unchecked even if they posed a danger to others.  He so testified despite acknowledging that ensuring the safety of the youths living in the center was one of the essential functions of his job.

Mr. King suggests that LCFS's stated reason for firing him—that he failed to follow workplace rules in a way that endangered the youth under his supervision—is pretextual.  *See Monroe*, 871 F.3d at 505 ("Pretext involves more than just faulty reasoning or mistaken judgment on the part of the employer; it is a lie, specifically a phony reason for some action.") (quotation and alteration omitted).  There is, however, no evidentiary support for Mr. King's theories that he was fired as part of an attempt by LCFS to hide its investigation of the alleged assault from DCFS, that he would be retaliated against for reporting the alleged assault, or that the youth fabricated the assault to have Mr. King fired.  Moreover, it is not clear how those theories, if true, would establish that LCFS fired Mr. King because of his disability.  *See Stelter v. Wis. Physicians Serv. Ins. Corp.*, 950 F.3d 488, 491 (7th Cir. 2020) ("To establish pretext, [plaintiff] needed to show through inconsistencies or contradictions by [defendant] that the reason for termination was not the reason proffered, but instead discriminatory.").  All existing evidence supports an inference that Plaintiff was terminated from his employment because he failed to perform his job's essential functions and was not meeting his employer's expectations.  He has failed to rebut this inference in a way that creates a genuine issue for trial.  *See, e.g., Leonberger v. Martin Marietta Materials, Inc.*, 231 F.3d 396, 399 (7th Cir. 2000) (finding that an employer's given reason for terminating an employee who "nodded off" while operating a front loader was not pretextual; "an employee who

is less than fully alert could harm himself and others if he is operating a front loader"). Summary judgment in favor of LCFS on Plaintiff's ADA disability discrimination claim is warranted.

### B. Failure to Accommodate

To succeed on a failure-to-accommodate claim, Plaintiff must show that (1) he was a qualified individual with a disability, (2) his employer was aware of his disability, and (3) his employer failed to reasonably accommodate his disability. *Scheidler*, 914 F.3d at 541 (citations omitted). "When a qualified employee has requested an accommodation, the ADA requires both parties to engage in an informal interactive process to identify an appropriate accommodation." *Youngman v. Peoria Cty.*, 947 F.3d 1037, 1042 (7th Cir. 2020) (citing 29 C.F.R. § 1630.2(o)(3)). Before an employer must work with an employee to identify an appropriate accommodation, the employee must notify his employer of his disability and ask for accommodation. *See Guzman v. Brown Cty.*, 884 F.3d 633, 642 (7th Cir. 2018). An employer's failure to engage in the interactive process is actionable only if it prevents identification of an appropriate accommodation for a qualified individual. *Spurling*, 739 F.3d at 1062 (quoting *Basden*, 714 F.3d at 1039). "Accordingly, [the employee] must show that a reasonable accommodation could be made that would enable [him] to carry out the essential functions of [his] job." *Id.*

In assessing whether Mr. King has shown he was a qualified person with a disability, the court noted that there is little evidence that LCFS was aware that Plaintiff had a disability at the time he was fired, or that Plaintiff could perform the essential functions of his job with a reasonable accommodation. Plaintiff's failure-to-accommodate claim falters for similar reasons. There is no evidence in the record that LCFS knew Plaintiff had schizoaffective disorder. Nor did Plaintiff identify a reasonable accommodation to his alleged disability, because the potential accommodation he suggested—for LCFS to hire another employee to cover his shift—is not a reasonable accommodation as a matter of law. *See Majors*, 714 F.3d at 535. Because Plaintiff has not raised a disputed factual issue regarding whether he was a "qualified individual," any failure by LCFS to engage in an interactive process to determine an appropriate accommodation

is not actionable. *Spurling*, 739 F.3d at 1062. LCFS's motion for summary judgment on King's failure to accommodate claim is granted.

## II. Plaintiff's Motion for Summary Judgment

Mr. King argues that the court should grant summary judgment in his own favor because LCFS has not come forward with evidence showing that it had no notice of his disability or his request for a reasonable accommodation. (Pl.'s MSJ at 1, 4–5.) Mr. King's failure to submit the statement of material facts required by the court's local rules by itself "constitutes grounds for denial of the motion." N.D. ILL. L.R. 56.1(a). Putting aside the issue of compliance with Local Rule 56.1, Plaintiff has not established that he is entitled to summary judgment. Plaintiff bears the burden of establishing that there are no disputes concerning each element of his ADA discrimination and failure-to-accommodate claims. *See Dargis v. Sheahan*, 526 F.3d 981, 986 (7th Cir. 2008). Plaintiff has not made such a showing, and Defendant has no obligation to provide evidence *negating* the elements of Plaintiff's claims. Defendant's purported lack of evidence that it was unaware of Plaintiff's disability or request for an accommodation does not merit summary judgment in Plaintiff's favor. Plaintiff's motion is denied.

## III. Plaintiff's Motion to Dismiss and Compel

After LCFS responded to Mr. King's motion for summary judgment, Plaintiff moved to dismiss LCFS's response, and to compel additional discovery from LCFS based on Plaintiff's belief that it is withholding documents. (Mot. to Dismiss & Compel at 1–2.) Mr. King moves to dismiss LCFS's response brief to his motion for summary judgment because he disputes LCFS's suggestion that he failed to follow Local Rule 56.1. As discussed above, however, that suggestion was well-taken: Plaintiff did not comply with Local Rule 56.1—he did not file a response to Defendant's Local Rule 56.1 statement of facts, nor did Plaintiff file a Local Rule 56.1 statement of facts with his own motion for summary judgment. *See* N.D. ILL. L.R. 56.1(a)–(b). Plaintiff's motion to dismiss or strike is denied. Additionally, the court denies Plaintiff's motion to compel. In October 2019, Plaintiff sought additional discovery [99] from Defendant of certain documents

including log sheets showing the ratio of children to staff, time sheets, and voluntary disability self-identification forms, among other documents. The court granted that motion to compel in part in October 2019 [102], and discovery closed at the end of November 2019. Then in January 2020, Mr. King filed this motion to compel stating that he still has not received certain information he requested such as time sheets showing employee breaks. During a hearing on February 4 of this year, this court determined that Defendant did produce many of the documents Plaintiff requested, and represented that other requested documents did not exist. The court noted, in any event, that much of the requested information does not appear material to Plaintiff's claims. Plaintiff does not now explain how access to time sheets would bolster any of his claims. The court reviewed the arguments made in Mr. King's motion to dismiss and compel in ruling on these motions for summary judgment. His motion is otherwise denied.

## CONCLUSION

The court considered the arguments in Mr. King's motion to dismiss and compel [113] as a reply brief, and declines to strike LCFS's response brief or compel additional discovery. Mr. King has failed to show that there is a genuine issue for trial on his disability discrimination and failure-to-accommodate claims brought under the ADA, or that he is entitled to judgment in his own favor as a matter of law. Accordingly, Mr. King's motion for summary judgment [104] is denied and LCFS's motion for summary judgment [105] is granted.

ENTER:

Date:   September 10, 2020

REBECCA R. PALLMEYER
United States District Judge